J-A22036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Q.R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.R., MOTHER | : : : : : : | |
| | : | No. 229 EDA 2018 |

Appeal from the Order Entered December 1, 2017
in the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0003030-2017,
FID: 51-FN-376411-2009

BEFORE:   BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED NOVEMBER 20, 2018**

Appellant H.R. ("Mother") files this appeal from the Order dated and entered on December 1, 2017, in the Court of Common Pleas of Philadelphia County Family Court adjudicating dependent her two sons, Q.R., born in December 2002, and L.R., born in October 2011 (collectively, the "Children").[1] Specifically, Mother appeals the finding of abuse as to Q.R. related to two

_____

* Former Justice specially assigned to the Superior Court.

[1] In its Opinion filed on May 31, 2018, the trial court erroneously indicates that the instant appeal arises from its December 1, 2017, and December 29, 2017, Orders involuntarily terminating Mother's parental rights. **See** Trial Court Opinion, filed 5/31/18, at 1.

indicated reports from August 26, 2017.[2]   After review, we affirm the trial court's order.

The family came to the attention of the Department of Human Services (DHS) on August 26, 2017, following reports of Mother's alleged physical abuse of Q.R.   N.T. at 9.   DHS alleged that Mother had filmed Q.R. masturbating with the intent to publish such video on the Internet.  *Id.* at 10-11.  As testified by DHS Intake Worker, Yavonna Shields, there were additional allegations of prior sexual abuse, untreated mental health issues, and harm to family pets related to Q.R.[3]  *Id.* at 11-13.

Notably, Q.R. had been hospitalized for mental health evaluations on three occasions since March of 2017 and was at Fairmount Behavioral Health at the time of the hearing.[4]  *Id.* at 14, 25.  Subsequent reports were received which included allegations relating to the mental health of Mother; lack of

---

[2] While the court expressed approval of DHS' oral request for the indicated Child Protective Services ("CPS") abuse reports of August 26, 2017, to be founded, Notes of Testimony ("N.T."), 12/1/17, at 44-47, we observe that there was not a written order reflecting a finding of abuse pursuant to 23 Pa.C.S.A. § 6303.

[3] Ms. Shields testified to allegations of Mother "hitting and punching" Q.R. N.T. at 9-10.  Ms. Shields further stated that, while Mother denied physical harm or discipline to Q.R., Mother confirmed filming Q.R. "dancing nude, but that she did not distribute it."  N.T. at 17-18.  Ms. Shields also noted that Mother admitted Q.R. had killed his brother's turtle.  *Id.* at 18.

[4] Q.R. reportedly did not wish return to Mother's care.  Dependency Petition, 11/14/17, at ¶¶5 b, c, i.

medical care as to Q.R. and L.R. for an extended period of time; physical discipline of Q.R.;[5] lack of treatment for Q.R. for past injuries and sexual abuse; Q.R.'s desire to harm animals; Mother's lack of compliance with the safety plan and refusal to accept in-home services and supports; absence of a bond between Mother and Q.R.; and the unkempt nature of the home.[6] Dependency Petition, 11/14/17, at ¶¶5 j, k.

DHS filed dependency petitions as to Q.R. and L.R. on November 14, 2017. An adjudicatory hearing pertaining to these petitions was held on December 1, 2017. Mother was present and represented by Elizabeth Larin, Esquire. Children, almost fifteen years old and six years old at the time, although not present, were represented by a Child Advocate, Brian Johnson, Esquire.[7] DHS presented the testimony of DHS Intake worker, Yavonna

_____

[5] Ms. Shields observed scars on Q.R.'s right shoulder, left thigh, and right thigh, which Q.R. attributed to Mother's branding him with a fork as a result of his playing with fire. Mother also hit him with a metal broom and burned him with a curling iron. N.T. at 18-19.

[6] On October 3, 2017, DHS observed "that [Q.R.]'s bedroom lacks a bed, and is strewn with clothes and trash; that [Mother] and [L.R.]'s bedroom was unkempt and contained a full-size bed on a broken metal frame and a deflated air mattress; that the home was unkempt and strewn with trash and dirty laundry on the floors; and that there were also several bags of trash and dirty diapers in the home." *Id.* at ¶5 l.

[7] Notably, Attorney Johnson's office, the Defender's Association Child Advocacy Unit, was appointed by the trial court on November 15, 2017, as counsel and guardian *ad litem* to represent the Children. Such appointment was to represent the Children's interests in connection with proceedings related to abuse, dependency, termination of parental rights, adoption and/or custody. Order Appointing Counsel, 11/15/17.

Shields, for purposes of the adjudication. Prior to the completion of Ms. Shields' testimony, Mother agreed to an adjudication of dependency and commitment.[8, 9] N.T. at 20. The parties stipulated that had Ms. Shields continued to testify she would have testified to the facts set forth in the dependency petitions. There was not a stipulation, however, as to the veracity of such facts. *Id.* at 21. Thereafter, the trial court additionally approved DHS'

_____

While this appeal was pending, this Court extended the requirements of *In re Adoption of L.B.M.*, 639 Pa. 428, 432, 161 A.3d 172, 174 (2017), and its progeny to dependency actions generally. *See L.B.M.*, *supra* (the issue decided was whether 23 Pa.C.S.A. § 2313(a), which mandates the appointment of counsel for children involved in contested involuntary termination of parental rights proceedings, is satisfied by the appointment of a GAL provided that the GAL is an attorney.); *see also In re T.S.*, ___ Pa. ____, 192 A.3d 1080 (2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome.); *In re J'K.M.*, 191 A.3d 907 (Pa.Super. 2018) (reversing order denying appointment of a separate counsel for dependency proceedings where there was a conflict between the child's best interests and legal interests). Instantly, upon our review, we discern no conflict between Q.R.'s preference and his best interests. However, the preference of L.R. who was six years old at the time of the proceeding in question is unknown, and the certified record does not suggest his preference. If the trial court determines there is a conflict between his preference and his best interests, L.R. must have separate legal counsel to advocate for those disparate interests in future proceedings.

[8] Attorney Johnson supported the adjudication and commitment of the Children. Specifically, in response to inquiry from the trial court, he replied, "I am in agreement with the stipulations as to [the Children's] full commits. And the recommendations for the children then for mom. . . ." N.T. at 49.

[9] Mother does not challenge the adjudication of dependency on appeal.

oral request for two indicated CPS abuse reports as to Q.R. from August 26, 2017, to be founded.[10] *Id.* at 44-47. The certified record, however, does not contain a written order reflecting a finding of abuse pursuant to 23 Pa.C.S.A. § 6303. Such a finding is not reflected in the court's December 1, 2017, order memorializing adjudication and disposition. Order of Adjudication and Disposition – Child Dependent, 12/1/17. Of relevance, the following exchange occurred on the record:

> **MS. HARRISON**: Your Honor, had previously inquired about the status of the report. So I don't know if the [c]ourt wants that on the record before mom leaves.
>
> **THE COURT**: Yes. What's the status of the reports of DHS investigation for August 26th.
>
> **MS. HARRISON**: Before she leaves.
>
> **THE COURT**: Counsel's here.
>
> **MS. HARRISON**: Okay.
>
> **THE COURT**: She needs to start making her phone call.
>
> **MS. HARRISON**: Your Honor, the CPS Report from 8/26/17 in regard to the hitting, that report is indicated. The additional CPS Report with respect to the other issues discussed with the [c]ourt will also be indicated.
>
> In addition, there were a number of reports that came in. There is a valid GPS from 10/2/2017, which is referenced in the

---

[10] The court additionally found that Mother's adult daughter, N.R., and N.R.'s infant daughter, N.M., also resided in Mother's household and then held Mother in custody until N.R. surrendered N.M. to DHS. *Id.* at 28-44. Mother appeals this issue separately at Superior Court Nos. 230 & 232 EDA 2018. N.R. and N.M. were not a subject of the instant dependency proceedings and appeal.

petition. And there is still pending CPS Report from 11/22 and that matter will still be pending, Your Honor.

**THE COURT**: So as it stands right now within the last say, like, four months I have two indicated reports.

**MS. HARRISON**: Two indicated and --

**MS. SHIELDS**: Three indicated, two from 8/26, one from 10/2 and a valid GPS from 10/3. And there's a pending CPS.

**THE COURT**: Okay. Thank you.

**MS. HARRISON**: And we would ask for the indicated reports to be founded based on the stipulation and the testimony if the [c]ourt would grant.

**MS. LARIN**: What are you asking?

**MS. HARRISON**: That the findings --

**THE COURT**: That the indicated reports --

**MS. LARIN**: Your Honor, I don't even have the --

**THE COURT**: -- be marked founded based on the stipulation.

Ms. Larin, I'll hear from you.

**MS. LARIN**: I mean, my only objection is that I haven't actually seen those reports. But if it's based on the stipulation of what's in the petition and if you're saying what's in the petition is what you're asking to be founded.

**MS. HARRISON**: Yes. Yes, correct.

**MS. LARIN**: That would --

I did not stipulate to the veracity of those, Your Honor.

**MS. HARRISON**: The [c]ourt can make a credibility determination of the testimony, which was on the two CPS Reports that was presented at the very least.

**THE COURT**: Well, actually, when we were on the record before counsel indicated that they would stipulate to the adjudication, Ms. Shields had already testified to the August 26, 2017, CPS Report.

- 6 -

**MS. LARIN**: Yes, Your Honor.

**THE COURT**: And I think that that dealt with the physical abuse or the alleged physical abuse of [Q.R.] by [Mother].

**MS. HARRISON**: And the videotaping.

**THE COURT**: And the videotaping.

**MS. HARRISON**: Which is the same day. It's a separate report.

**THE COURT**: And it's a separate report. So those are the two reports that did come in. And so, based on that I believe that I can make the finding.

**MS. HARRISON**: Thank you.

**THE COURT**: In terms of the October 2nd report, and I think the October 2nd report had to do with – I don't know that I got full testimony on the October 2nd report.

**MS. HARRISON**: I'm fine with the two founded reports, Your Honor. That's sufficient.

**THE COURT**: Okay. That's fine. So that's what I feel comfortable with doing.

. . .

N.T. at 44-47.

On December 29, 2017, Mother, through counsel, filed a timely notice of appeal as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) Opinion on May 31, 2018.[11]

On appeal, Mother raises the following issues for this Court's review:

---

[11] The trial court filed a single opinion addressing the instant appeal involving the court's finding of abuse and Mother's separate challenge to her incarceration.

- 7 -

1. Did the trial court commit an error of law and abuse of discretion by finding child abuse after [Mother] had already been involuntarily removed from the [c]ourtroom, so that she was unable to present any evidence in her own defense, in violation of her rights to due process?

2. Did the trial court commit an error of law and abuse of discretion by finding child abuse when [Mother] had not been provided notice that the Philadelphia Department of Human Services intended to pursue a finding of child abuse against her, and where the Philadelphia Department of Human Services did not indicate that they were requesting a finding of child abuse at the outset of the Adjudicatory hearing?

3. To the extent the trial court based a finding of child abuse on counsel's stipulation at the Adjudicatory hearing, did the trial court commit an error of law, abuse of discretion, and violate [Mother]'s right to due process?

4. Did the trial court commit an error of law and abuse of discretion when it based its finding of child abuse on uncorroborated hearsay statements, in violation of 23 Pa.C.S.[A.] §6381(b), the Juvenile Act, the Pennsylvania Rules of Evidence, and [Mother]'s right to due process?

5. Did the trial court commit an error of law and abuse of discretion by finding child abuse where the Philadelphia Department of Human Services failed to prove by clear and convincing evidence that the child was abused, as defined by 23 Pa.C.S.[A.] §6303?

Mother's Brief at 7-8.

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010) (citations omitted);

*see also In the Interest of L.Z.*, 631 Pa. 343, 111 A.3d 1164 (2015). "The

trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citations omitted).

> [T]o adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:
>
> > is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.
>
> 42 Pa.C.S.A. § 6302(1). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.,* 696 A.2d 840, 843 (Pa.Super. 1997) (citation omitted).
>
> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In re R.T.,* [ ] 592 A.2d 55, 57 (Pa.Super. 1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re C.R.S., supra* at 845 (citation omitted).

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013).

Under the current version of the CPSL, effective June 12, 2018,[12] child

abuse is now defined as follows:

**(b.1)  Child  abuse.--**The  term  "child  abuse"  shall  mean intentionally, knowingly or recklessly doing any of the following:

(1)      Causing bodily injury to a child through any recent act or failure to act.

(2)      Fabricating,  feigning  or  intentionally  exaggerating or  inducing  a  medical  symptom  or  disease  which results  in  a  potentially  harmful  medical  evaluation or treatment to the child through any recent act.

(3)      Causing  or  substantially  contributing  to  serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.

(4)      Causing  sexual  abuse  or  exploitation  of  a  child through any act or failure to act.

(5)      Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

(6)      Creating   a   likelihood   of   sexual   abuse   or exploitation  of  a  child  through  any  recent  act  or failure to act.

(7)      Causing serious physical neglect of a child.

(8)      Engaging in any of the following recent acts:

(i)  Kicking,  biting,  throwing,  burning,  stabbing  or cutting a child in a manner that endangers the child.

---

[12] The definition of child abuse remained the same as the prior version of the CPSL, effective October 28, 2016, to February 20, 2018, in effect on August 26, 2017.  Further, only Subsections (b.1)(8)(vii)(D) and (b.1)(10), which are not relevant instantly, were not included in the version of the CPSL, effective July 1, 2015, to October 27, 2016, in effect prior to that.

(ii) Unreasonably restraining or confining a child, based on consideration of the method, location or the duration of the restraint or confinement.

(iii) Forcefully shaking a child under one year of age.

(iv) Forcefully slapping or otherwise striking a child under one year of age.

(v) Interfering with the breathing of a child.

(vi) Causing a child to be present at a location while a violation of 18 Pa.C.S.[A.] § 7508.2 (relating to operation of methamphetamine laboratory) is occurring, provided that the violation is being investigated by law enforcement.

(vii) Leaving a child unsupervised with an individual, other than the child's parent, who the actor knows or reasonably should have known:

> (A)   Is required to register as a Tier II or Tier III sexual offender under 42 Pa.C.S.[A.] Ch. 97 Subch. H (relating to registration of sexual offenders),[11] where the victim of the sexual offense was under 18 years of age when the crime was committed.

> (B)   Has been determined to be a sexually violent predator under 42 Pa.C.S.[A.] § 9799.24 (relating to assessments) or any of its predecessors.

> (C)   Has been determined to be a sexually violent delinquent child as defined in 42 Pa.C.S.[A.] § 9799.12 (relating to definitions).

> (D)   Has been determined to be a sexually violent predator under 42 Pa.C.S.[A.] § 9799.58 (relating to assessments) or has to register for life under 42 Pa.C.S.[A.] § 9799.55(b) (relating to registration).

<div style="margin-left: 2em;">

(9)  Causing the death of the child through any act or failure to act.

(10)  Engaging a child in a severe form of trafficking in persons or sex trafficking, as those terms are defined under section 103 of the Trafficking Victims Protection Act of 2000 (114 Stat. 1466, 22 U.S.C. § 7102).

</div>

23 Pa.C.S.A. § 6303(b.1) (footnote omitted).

Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S.A. § 6303(a). Serious mental injury is defined as "[a] psychological condition, as diagnosed by a physician or licensed psychologist, including the refusal of appropriate treatment, that: (1) renders a child chronically and severely anxious, agitated, depressed, socially withdrawn, psychotic or in reasonable fear that the child's life or safety is threatened; or (2) seriously interferes with a child's ability to accomplish age-appropriate developmental and social tasks." *Id.* Further, serious physical neglect is defined as follows:

<div style="margin-left: 2em;">

Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:

  (1)  A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.

  (2)  The failure to provide a child with adequate essentials of life, including food, shelter or medical care.

</div>

- 12 -

*Id.* Lastly, sexual abuse or exploitation is defined, in part, as "(1) [t]he employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct, which includes, but is not limited to, the following: . . . (iv) [a]ctual or simulated sexual activity for the purpose of producing visual depiction, including photographing, videotaping, computer depicting or filming. . . ." *Id.*

In ***In the Interest of J.R.W.***, 631 A.2d 1019, 1024 (Pa.Super. 1993), we explained that, pursuant to the doctrine of incorporation, the Juvenile Act's definition of dependent child subsumed the definition of child abuse outlined in the CPSL. Thus, we stated the two laws "must be applied together in the resolution of child abuse complaints." *Id.* at 1023. We reasoned:

> The Legislature intended a detailed and specific definition of abuse to leave no doubt as to the capacity of the trial court, which in this case can only be the Juvenile Court, to make a finding and determination that a child has been abused. In its capacity as a trial judge, the Juvenile Court judge will look and must look to the above definition of child abuse in a case referred by the child protective service agency to the Court under petition for review of dependency when child abuse has been alleged.

*Id.*

In addition to establishing the pertinent definition of child abuse, the court in ***In the Interest of J.R.W.*** also stressed that the juvenile court's determination of whether child abuse occurred must be supported by clear and convincing evidence. *Id.*

> [T]he clear and convincing evidence necessary to find dependency, has been imposed by the Legislature as the standard which the Juvenile Court must apply in deciding abuse cases. . . .

- 13 -

There is no conflict, constitutional or otherwise, with the clear and convincing evidence standard imposed by the Act to establish child abuse.

*Id.*; *see also In re L.Z.*, ___ Pa. ___, 111 A.3d 1164, 1174 (2015).

Moreover, 23 Pa.C.S.A. § 6381 provides, in part:

**(d) Prima facie evidence of abuse.--**Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

As to the August 26, 2017, reports of abuse, the trial court stated:

In the present case, the social worker testified based on her investigation following a Child Protective Services report, Q.R. showed her scars on his body he attributed to the physical abuse of his Mother. Furthermore, the social worker testified Mother confirmed she videotaped Q.R. engaged in sexual acts on her telephone. Furthermore, Mother admitted she was aware [of] Q.R. harming family pets. The social worker testified Mother stated allegations of her hitting Q.R. were false.

Counsel for the Department of Human Services requested the indicated Child Protected Services report of August 26, 2017 alleging physical abuse of Q.R. and videotaping of Q.R. be marked, "founded." Counsel for Mother stipulated to the petition of the Department of Human Services and adjudication of Q.R. and L.R. The [c]ourt's ruling and determinations were based on the testimony of the social worker.

The [c]ourt reasoned concern of the allegations of physical and sexual abuse perpetrated on Q.R. by Mother. The [c]ourt marked the indicated Child Protective Services report of August 26, 2017 as founded based on the testimony and the stipulations.

Trial Court Opinion, 5/31/18, at 4-5 (citations to N.T. omitted). Mother argues

that the trial court entered a finding of abuse without notice and in violation

of due process, and on the basis improperly admitted evidence. Mother's Brief at 19-59.

In the case *sub judice*, when adjudicating Q.R. dependent the trial court did not make a finding of abuse pursuant to 23 Pa.C.S.A. § 6303. Although such is arguably apparent from the court's on-the-record findings, N.T. at 44-47, the trial court did not include such a finding in its written adjudication, or otherwise.[13] Order of Adjudication and Disposition – Child Dependent, 12/1/17. Hence, an appeal of this issue is not viable. **See** Pa.R.A.P. 341 (an appeal may be taken from an order entered as a final order).

Further, to the extent Mother argues before this Court that her right to due process was violated due to lack of notice or the fact that the issue was addressed after she was removed from the courtroom, Mother failed to raise this claim first with the trial court and, instead, presents it for the first time on appeal. Additionally, counsel did not timely challenge that a finding of abuse was addressed after Mother had been removed from the courtroom and, therefore, outside the presence of Mother. Counsel, who was present and remained in the courtroom after Mother was removed therefrom, placed an

---

[13] While it is not indicated on the cover sheet of the petition that the petition alleges child abuse pursuant to 23 Pa.C.S.A. § 6303, it certainly is arguable from the allegations set forth therein pertaining to the purported physical abuse and discipline of Q.R., the filming of Q.R., the failure to comply with the recommended mental health treatment, and the failure to provide appropriate medical care. Dependency Petition, 11/14/17, at ¶¶5b, c, j, k.

objection on the record related to the CPS reports of August 26, 2017, involving the alleged abuse of Q.R. by Mother and indicated she had not seen the reports. N.T. at 46; however, counsel did not raise a lack of notice or failure to raise the issue of abuse in the petition. Thus, Mother has waived these claims on appeal. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); ***Fillmore v. Hill***, 665 A.2d 514, 515-16 (Pa.Super. 1995), *appeal denied*, 544 Pa. 609, 674 A.2d 1073 (1996) (stating: "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted).

For the foregoing reasons, Mother's claims fail, and the trial court's Order adjudicating Children dependent is affirmed.

Order affirmed.

P.J.E. Bender joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/20/18</u>